# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

GERALD GAGLIARDI and
PATRICIA GAGLIARDI,

    Plaintiffs,

v.                                     CASE NO: 8:16-CV-3354-T-30TGW

LIBERTY MUTUAL FIRE
INSURANCE COMPANY,

    Defendant.
_____/

# ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 18), Plaintiffs' Response in Opposition (Dkt. 22), and Defendant's Reply (Dkt. 25). The Court, having reviewed the motion, response, reply, record evidence, and being otherwise advised in the premises, concludes that the motion should be denied because there are genuine issues of material fact that the jury must decide.

## RELEVANT FACTS[1]

Plaintiffs Gerald Gagliardi and Patricia Gagliardi allege that Defendant Liberty Mutual Fire Insurance Company breached its insurance policy with Plaintiffs when it denied their claim associated with a sinkhole loss to their residence located in Hudson, Florida.

---

[1] These facts are interpreted in a light most favorable to Plaintiffs, the non-movants.

At all material times, Plaintiffs owned the property located at 13433 Oscar Ct., Hudson, FL 34669 (the "Insured Property"). Defendant issued to Plaintiffs an insurance policy, policy number H32-251-459831-101 3 (the "Policy"), which was effective February 24, 2011, to February 24, 2012. The Policy includes special provision form FMHO 1067 12 10 that provides coverage for "sinkhole loss" defined as "structural damage to the building, including the foundation, caused by sinkhole activity." The Policy also provides that Defendant will "pay to stabilize the land and building and repair the foundation in accordance with the recommendations of a professional engineer and in consultation with you." (Dkt. 22-1).

On or about March 12, 2011, Plaintiffs noticed cracking damage to the Insured Property. Plaintiffs timely reported the loss and damage to Defendant. In response to Plaintiffs' claim, Defendant retained Ground Down Engineering ("GDE"), a geotechnical and engineering firm, to complete an investigation of the Insured Property.

On or about June 29, 2011, GDE issued a report of its findings and conclusions from its investigation of the Insured Property. In its report, GDE concluded that sinkhole activity was a cause of damage, within a reasonable degree of professional probability, and verified the existence of a sinkhole loss, as that term is defined under the Policy. For subsidence repairs, GDE estimated 300 to 400 cubic yards of compaction grout.

After sinkhole activity and resulting damages to the structure were confirmed by GDE, Plaintiffs entered into a contract with C&N Foundation Technologies ("C&N") to implement the subsurface repairs recommended by GDE. Defendant used GDE to review

and monitor implementation of the subsurface repairs that were performed by C&N at the Insured Property. C&N finished conducting subsurface repair work at the Insured Property on or about October 5, 2011.

On October 19, 2011, GDE issued its Grout Monitoring Report. According to GDE's Grout Monitoring Report, only 113.8 cubic yards of compaction grout were installed at the Insured Property. The Grout Monitoring Report noted that GDE monitored the remediation at the Insured Property and that the "purpose of the monitoring was to ensure that the repairs were completed in accordance with GDE's repair recommendations." (Dkt. 18-14).

Defendant did not renew Plaintiffs' homeowners' insurance coverage after the Policy expired February 24, 2012.

Following the completion of the remediation program, Plaintiffs experienced continuing and increasing damage to the Insured Property and reported their concerns to Defendant. Specifically, Plaintiffs noticed a hole at the Insured Property that occurred after completion of the remediation. Plaintiffs also noticed drainage issues in the yard and were concerned that the grouting process was causing the ground to hold water and not drain as it had previously. In response, Defendant retained GDE to conduct a site inspection of the Insured Property.

GDE issued a report dated September 7, 2012. GDE concluded that the additional damage at the Insured Property was not due to sinkhole activity and/or the subsidence repairs conducted at the Insured Property. The report stated that: "It is our opinion that [the hole] is related to natural drainage that occurs around sprinkler heads." (Dkt. 18-18). GDE also

concluded that the grout was not affecting the drainage and noted that the rainfall in the area had been higher than normal.

On or about July 28, 2015, Plaintiffs continued to observe damage at the Insured Property. Plaintiffs notified Defendant of the damage and voiced their concerns regarding the sufficiency of the subsurface repair work performed at their home. In response, on or about August 10, 2015, Defendant requested that Plaintiffs submit to examinations under oath. Defendant also retained Anticus Engineering to evaluate whether the damage Plaintiffs had reported was new damage or related to the 2011 remediation.

Anticus issued a report dated January 11, 2016, that concluded that the damage was not associated with sinkhole activity, that the prior sinkhole activity was remediated, and that the current damage was attributable to "construction/installation methods and aging (exposure of materials to variation in temperature/humidity/moisture)." (Dkt. 18-19).

In a letter dated January 27, 2016, Defendant denied coverage for Plaintiffs' claim. Given their concerns with ongoing damage, the sufficiency of the subsurface repairs, and the denial of their claim, Plaintiffs invoked neutral evaluation pursuant to Fla. Stat. §627.7074. The neutral evaluation conference took place on or about May 11, 2016. The neutral evaluator, David Aponte, issued his report on June 7, 2015, concluding that sinkhole activity was not the cause of damage to the Insured Property. He also stated that he agreed "with GDE and Anticus that the previously confirmed sinkhole activity has been satisfactorily remediated." (Dkt. 18-21). On August 11, 2016, Defendant issued a letter to Plaintiffs that reiterated its denial of Plaintiffs' claim.

Plaintiffs retained Bay Area Sinkhole Investigation and Civil Engineering, Inc. ("BASIC") to obtain an independent opinion regarding the damage to the Insured Property. On September 14, 2016, BASIC issued a report based upon its subsidence investigation at the Insured Property. In its report, BASIC concluded that sinkhole activity continued to be a cause of damage to the structure at the Insured Property, and that compaction grout and chemical grout were required to remediate the ongoing sinkhole activity.

On September 14, 2016, Plaintiffs sent a copy of the BASIC report to Defendant along with correspondence inquiring as to whether Defendant would extend coverage for the loss based upon BASIC's report. Defendant retained Anticus to review BASIC's report. In a report dated October 6, 2016, Anticus opined that damage to the Insured Property was not associated with sinkhole activity. In a letter dated October 12, 2016, Defendant reiterated its denial of Plaintiffs' claim. On October 25, 2016, Plaintiffs instituted this lawsuit against Defendant.

Plaintiffs allege one claim of breach of contract. Now, Defendant moves for summary judgment. Defendant argues that Plaintiffs cannot meet the burden of proof in this breach of contract action because: (1) Plaintiffs entered into a contract for the repairs with C&N, not Defendant; (2) no evidence exists that the 2011 repairs were performed deficiently; (3) the damage in 2015 at the Insured Property is not a breach of contract; (4) Plaintiffs cannot link the 2011 repairs to the 2015 damage; and (5) Plaintiffs' claim is barred by the statute of limitations. As explained below, the record is rife with material disputed facts that preclude the entry of summary judgment on any of these issues.

# **SUMMARY JUDGMENT STANDARD OF REVIEW**

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee*

*Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

**I.     Defendant's Argument That It Did Not Contract for the Repairs**

Defendant first argues that it did not breach the Policy as a matter of law because Plaintiffs contracted with C&N, not Defendant, to perform repairs to the Insured Property in 2011. Defendant then contends that, since C&N conducted the repairs, any dispute regarding same should be with C&N, not Defendant. But the record reflects that this is not simply a case about deficient repairs; to the contrary, Plaintiffs allege that Defendant was placed on notice as early as 2012 that additional repairs were necessary associated with sinkhole damage that Plaintiffs continued to observe on the Insured Property and Defendant concluded that the damages were not associated with sinkhole activity. Based on the conflicting evidence about whether or not additional sinkhole activity was present (that related back to the initial loss in 2011) and whether or not Defendant fulfilled its obligation under the Policy to "stabilize the land and building and repair the foundation" when C&N completed the initial repairs, the Court cannot grant summary judgment.

Notably, the only case Defendant relies upon to argue that Plaintiffs should be asserting their breach of contract claim against C&N directly is unhelpful. *See generally Vehse v. Liberty Mutual Fire Ins. Co.*, No. 8:16-cv-599-T-33JSS, 2017 WL 839520 (M.D. Fla. Mar. 1, 2017). In *Vehse*, the plaintiff did not direct the court to any material disputed facts in response to the defendant's motion for summary judgment, even after the court pointed out that the plaintiff's response was deficient and provided the plaintiff with a second chance to challenge the record evidence. The court essentially adopted the facts presented by the defendant and then entered summary judgment in defendant's favor. *See id.* at *5 (noting that: "When confronted with [plaintiff's] circular and procedurally deficient response to the Motion for Summary Judgment, the Court, in an abundance of fairness, provided [plaintiff] with an opportunity to provide a factual basis for his arguments. [Plaintiff] did not avail himself of the opportunity. [Plaintiff] has not identified any genuine issues of material fact, supported by the record, for resolution by a jury. The Court finds that Liberty Mutual is entitled to judgment as a matter of law and therefore grants Liberty Mutual's Motion for Summary Judgment.").

The facts presented here are different. The record reflects that Plaintiffs advised Defendant soon after the completion of the repairs that the Insured Property still appeared to be suffering damage associated with the same sinkhole activity. Plaintiffs also point to evidence that GDE, who was monitoring the repairs on Defendant's behalf, failed to adequately estimate and then review the subsurface repairs to ensure that the Insured

Property was properly stabilized. Accordingly, Defendant's motion is denied with respect to this issue.

## II. Defendant's Argument That the 2011 Repairs Were Not Deficient

Defendant next argues that there is no evidence that the 2011 repairs were performed deficiently and therefore Plaintiffs cannot prove that a breach of the Policy occurred. This argument fails and deserves little attention because Plaintiffs have pointed to evidence that suggests that the repairs were deficient. Defendant's reply requests that the Court disregard most of Plaintiffs' evidence for various reasons, mostly hinging on arguments that should have been raised in a motion to strike or a *Daubert* motion.

For example, Defendant's reply contends that Plaintiffs cannot rely on testimony from BASIC engineer Justin James because his testimony was not fully disclosed in the BASIC report and Plaintiffs did not supplement the report by the Court's deadline. If true, Defendant should have moved to strike this testimony. Notably, James' deposition was taken on August 29, 2017. At that time, James testified about these purported new opinions. Defendant could have moved to strike them at that time or any time prior to the dispositive motion deadline. Defendant failed to do so. Accordingly, Defendant's motion is denied with respect to this issue.

## III. Defendant's Argument That the 2015 Damage Is Not a Breach of Contract

Defendant seems to argue that any damages to the Insured Property that occurred in 2015 do not amount to a breach of contract because the Policy was not in effect at that time. This argument is overly simplistic. Plaintiffs' lawsuit is premised on the fact that the parties

had a contract for Defendant to stabilize the land and building and repair the foundation of the Insured Property and the 2015 damage to the Insured Property was caused by Defendant's failure to fulfill this contractual obligation when the 2011 repairs were performed. Accordingly, Defendant's motion is denied on this issue.

### IV. Defendant's Argument That Plaintiffs Cannot Link the 2011 Repairs to the 2015 Damage

Related to the last issue, Defendant next contends that the record does not establish any link between the 2011 repairs and the 2015 damage. The record is disputed on this issue. Plaintiffs point to evidence that the 2011 repairs were deficient because they did not stabilize the land and repair the foundation of the Insured Property. As a result, Plaintiffs argue the sinkhole activity at the Insured Property was deficiently repaired in 2011 and has been ongoing since that time. The Court cannot determine this issue as a matter of law. Accordingly, Defendant's motion is denied with respect to this issue.

### V. Defendant's Statute of Limitations' Argument

Defendant's final argument is that Florida's five-year statute of limitations bars Plaintiffs' breach of contract claim because the repairs were completed on October 5, 2011, and any breach occurred at that time. This argument is without merit. In a breach of contract action, the statute of limitations generally runs for five years from the time that the contract is breached. *See State Farm Mut. Auto. Ins. Co. v. Lee*, 678 So. 2d 818, 821 (Fla. 1996). Here, Plaintiffs point to evidence that the Policy was breached several times: when Plaintiffs informed Defendant of the increasing damage in 2012, and Defendant failed to determine whether it had properly stabilized the land and repaired the foundation, *and* when Defendant

subsequently denied Plaintiffs' insurance claims in 2016, following the neutral evaluation and the subsequent report from Anticus. Accordingly, Defendant's motion is denied on this issue.

## CONCLUSION

In sum, the record reflects a number of genuine issues of material fact that preclude the entry of summary judgment in Defendant's favor on Plaintiffs' breach of contract claim. It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (Dkt. 18) is denied.

**DONE** and **ORDERED** in Tampa, Florida on January 2, 2018.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel/Parties of Record